OAKWOOD MOBILE HOMES, INC
and William J. Rotert, Jr.,
Movants,

v.

Sherrie A. SPROWLS, Respondent.

No. 2002–SC–0147–I.

Supreme Court of Kentucky.

Aug. 22, 2002.

As Amended Aug. 26, 2002.

## OPINION AND ORDER DENYING MOTION TO VACATE PURSUANT TO CR 65.09

### I. INTRODUCTION

Pursuant to CR 65.09, Oakwood Homes, Inc. ("Oakwood") and William J. Rotert, Jr. ("Rotert") (hereinafter collectively "Movants") ask this Court to vacate a February 18, 2002 order of the Court of Appeals. In the order, the Court of Appeals denied Movants' CR 65.07 motion seeking relief from the Hardin Circuit Court's order denying Movants' Motion to Compel Arbitration. We hold that Movants have failed to show extraordinary cause to justify the relief they seek, and we therefore deny Movants' motion.

### II. FACTUAL BACKGROUND

The underlying dispute between the parties is a civil action for damages under Kentucky's Civil Rights Act (KRS Chapter 344) and for the tort of outrageous conduct. Respondent alleges that: (1) her employer, Oakwood, discriminated against her on the basis of her sex when it passed her over for promotion; and (2) both Oakwood and Respondent's former general

Manager, Rotert, intentionally and continuously subjected her to extreme and outrageous conduct that caused her severe emotional distress. Respondent originally filed her lawsuit in the Hardin Circuit Court, but Movants were initially successful in removing the action to the United States District Court for the Western District of Kentucky.

Movants allege that Respondent entered into an arbitration agreement in which she agreed that all employment disputes between herself and Oakwood would be referred to arbitration. Thus Movants filed a motion asking the United States District Court to dismiss Respondent's action or, in the alternative, to stay the action and compel arbitration. The District Court conducted an evidentiary hearing on Movants' motion, found that no arbitration agreement existed because Respondent did not have actual notice of Oakwood's unilateral adoption of its mandatory "Dispute Resolution Program" for its employees, and denied Movants' motion. Thereafter, pursuant to applicable federal law, Movants appealed the District Court's denial of arbitration to the United States Court of Appeals for the Sixth Circuit. While the arbitration appeal was pending, the District Court determined that it lacked subject matter jurisdiction over the claim and remanded the action to state court. Movants then appealed the remand, but the Sixth Circuit Court of Appeals dismissed Movants' appeal of the remand for lack of jurisdiction and then dismissed Movants' then-pending arbitration appeal as moot.

Back before the Hardin Circuit Court, Movants renewed their motion to compel arbitration. After adopting the factual findings and reasoning of the United States District Court, the Hardin Circuit Court denied Movants' motion:

> Defendant's alternatively move this court to stay the action and compel arbitration. They argue that the Plaintiff assented to the arbitration program by continuing her employment with Oakwood Mobile Homes after the program was implemented, despite the fact that the Plaintiff emphatically denied ever having been informed about the program. At the heart of the dispute between the parties therefore, is the proper forum for the resolution of the Plaintiff's claims.

Defendants proffer three arguments in support of their Motion to Stay and Compel Arbitration: (1) "that the Supreme Court's decision in *Circuit City v. Adams,* 532 U.S. 105[, 121 S.Ct. 1302, 149 L.Ed.2d 234] (2001), confirms that agreements to arbitrate statutory claims are enforceable," (2) "Kentucky case law firmly establishes the right of an employer to promulgate and modify employment policies and practices unilaterally," and (3) "reasonable notice is all that is required to apprise employees of a change in the terms or conditions of their employment."

In their Memorandum in Support of Defendants' Motion to Dismiss or Alternative Motion to Compel Arbitration, Defendant's correctly state that statutory claims can be subject to arbitration. *Circuit City v. Adams,* [*supra* ]. However, whether the Plaintiffs' [sic] statutory claims are arbitrable is not in dispute. The Plaintiff simply argues that she had no notice of the arbitration program.

Defendants next argue that an employer may unilaterally alter the terms and conditions of an at-will employment relationship. Without a doubt, jurisdictions across the country recognize that employers may unilaterally alter the terms and conditions of a person's employment. Still however, the Plaintiff argues that she had no notice of the

unilateral change in policy and cannot therefore, be bound by that change in policy. *See generally,* Thomas G. Fischer, Annotation, *Sufficiency of Notice or Modification of Compensation of At-will Employee Who Continues Performance to Bind Employee,* 69 A.L.R.4th 1145 (2001) (noting lack of notice as bar to binding employee to new term).

With regard to the third argument, Defendants argue that "reasonable notice" of the arbitration clause is the standard to which the Plaintiff should be held for binding arbitration. For this proposition, the Defendants rely heavily on *Highstone v. Westin Eng'g, Inc.,* 187 F.3d 548 (6th Cir.1999), a case originating from Michigan. While the *Highstone* case may have been decided by our own United States Court of Appeals for the Sixth Circuit, the fact remains that *Highstone* is a Michigan case interpreting Michigan contract law. Because arbitration agreements are a matter of contract, *AT & T Technologies, Inc., v. Communications Workers of America,* 475 U.S. 643[, 106 S.Ct. 1415, 89 L.Ed.2d 648] (1986)(stating that arbitration is a matter of contract), and are interpreted according to state law, *Perry v. Thomas,* 482 U.S. 483[, 107 S.Ct. 2520, 96 L.Ed.2d 426] (1987) (stating that "state law, whether of legislative or judicial origin, is applicable [to arbitration agreements] if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally"), a Michigan case interpreting Michigan contract law is inapposite to interpreting Kentucky's law of contracts.[3]

_____

[3] Michigan's "reasonable notice" standard would vitiate the requirement of the "meeting of the minds", which is an essential element to the formation of a contract or the acceptance of a unilateral alteration of policy. Moreover, Kentucky law requires a "meeting of the minds." *Harlan Public Service Co. v. Eastern Const. Co,* [254] Ky. [135], 71 S.W.2d 24 (1934)(stating that to constitute a binding contract, minds of the parties must meet, and one cannot be bound to a contract to which he was not a party, nor by uncommunicated terms without his consent.)

As noted by the Plaintiff, the "first task of a court asked to compel arbitration is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626[, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444, 454] (1985). After removal and while this case was pending in U.S. District Court before Judge John G. Heburn, III, an evidentiary hearing occurred, pursuant to 9 U.S.C. § 4, with regard to whether or not the parties agreed to arbitrate. After this hearing, the case was then remanded to this Court.

Based on that hearing, the U.S. District Court made several findings of fact. Although not bound to do so, this Court adopts the findings of fact with regard to whether Plaintiff Sprowls had notice of the arbitration program with respect to her employment claims. During that hearing, Defendant Oakwood presented evidence that it notified all employees by mail using the information in its corporate database. It also presented evidence that it published notice of the arbitration program in a weekly newsletter and that management discussed the arbitration program with its employees. Plaintiff Sprowls however, denied any knowledge of the program. Interestingly enough, she is not alone. Of the six sales representatives who worked in Oakwood's Sales Center, four of them denied knowledge of the arbitration program. For these reasons, *this Court*

*makes the factual finding that Plaintiff Sprowls did not have notice of the arbitration program and therefore, could not have assented to being bound by it by continuing her employment with Oakwood. For the reasons stated above, the Defendants' Motion to Stay the Action and Compel Arbitration is* DENIED.

(Emphasis added and footnotes 2, 4, and 5 omitted).

Movants then sought appellate review on two (2) fronts. First, in 2001–CA–2642, Movants sought interlocutory relief in the Court of Appeals under CR 65.07.[1] The Court of Appeals denied the requested relief in a one (1) sentence order that read: "It is ORDERED that movants' motion pursuant to CR 65.07 for relief from order denying motion to compel arbitration and movants' motion for oral argument be DENIED." The matter now before this Court represents Movants' CR 65.09[2] motion to vacate the order of the Court of Appeals in 2001–CA–2642.

■ Because of the nature of Movants' CR 65.09 arguments, however, we also observe that, after filing the CR 65.07 matter in the Court of Appeals, Movants filed a direct appeal, 2001–CA–2668—ostensibly in accordance with CR 73[3]—from the trial court's order denying arbitration. Although Movants advise us that the Court of Appeals issued a show cause order on February 13, 2002 stating that "[i]t appears to the Court that this appeal was taken from a decision that is not final or appealable" and granting Movants twenty (20) days "in which to SHOW CAUSE why this appeal should not be dismissed as interlocutory," the Court of Appeals has not dismissed the action. In fact, the record in 2001–CA–2668 reflects that Movants filed a timely response to the Court's show cause order, that the parties have subsequently briefed the appeal, and that the matter remains pending in the Court of Appeals.

## III. ANALYSIS

■ Interlocutory relief in the Supreme Court is governed by CR 65.09:

Any party adversely affected by an order of the Court of Appeals in a proceeding under Rule 65.07 or Rule 65.08 may within five (5) days after the date on which such order was entered, move the Supreme Court to vacate or modify it. The decision whether to review such order shall be discretionary with the Supreme Court. Such a motion will be entertained only for extraordinary cause shown in the motion.[4]

Recently, in *National Collegiate Athletic Ass'n v. Lasege,*[5] we observed that interlocutory appellate relief in this Court is

---

1. "Though the granting, denying, modifying, or dissolving of a temporary injunction is not a final order, [CR 65.07] gives a party adversely affected the right to apply to the Court of Appeals for temporary relief." Kurt A. Phillips, Jr., 7 Kentucky Practice (Rules of Civil Procedure Annotated) (5th ed.) at 510 (West Publishing Co.1995).

2. "[CR 65.09] provides for interlocutory relief by the Supreme Court of Kentucky of an order of the Court of Appeals, ruling on a motion seeking relief from the granting or denial of a temporary injunction under CR 65.07 . . . ." *Id.* at 520.

3. "Appeals may be taken only from final and appealable judgments and orders." Rule 54.01 defines a final and appealable order as "a final order adjudicating all the rights of all parties in an action or proceeding or a judgment made final under Rule 54.02." *Id.* at 565. *See also infra* note 9 and surrounding text.

4. CR 65.09(1).

5. Ky., 53 S.W.3d 77 (2001).

available only in cases that demonstrate "extraordinary cause," but that an abuse of discretion by the trial court may justify relief:

> Under CR 65.07, the Court of Appeals may reverse [a circuit court's determination regarding the propriety of injunctive relief] only where it appears that the circuit court has made clearly erroneous findings unsupported by substantial evidence. Interlocutory relief in this Court is appropriate only where we find that it is warranted by "extraordinary cause." ...

> While additional review by this Court is limited to those cases which demonstrate "extraordinary cause," abuses of discretion by the courts below can supply such cause. In *Commonweath, Revenue Cabinet v. Picklesimer* [Ky., 879 S.W.2d 482 (1994)], this Court addressed the Revenue Cabinet's CR 65.09 motion seeking dissolution of a temporary injunction which prohibited it from preventing Picklesimer from re-taking elected office despite ongoing removal proceedings from a prior term. The Court accepted the Cabinet's argument that CR 65.09 relief could be justified if a trial court's findings were clearly erroneous, but denied relief because it found the trial court's findings supported by substantial evidence.[6]

In the case at bar, however, we find no "extraordinary cause" to warrant CR 65.09 relief.

Initially, we note that Movants' CR 65.09 motion scarcely addresses the only real issue before the Court—i.e., whether the trial court abused its discretion when it denied Movants' motion to compel arbitration. Instead, Movants question the adequacy of CR 65.07 and CR 65.09 interlocutory appeal procedures—designed to allow expedited and timely review of trial court rulings as to temporary injunctive relief—as a forum for appellate review of denials of motions to compel arbitration. Specifically, Movants argue that CR 65.07's requirement that they must make a threshold showing of injury before the Court of Appeals may grant relief[7] violates the Supremacy Clause of the United States Constitution and ignores the Federal Arbitration Act's ("FAA's") provision for direct appeals from denials of motions to compel arbitration.[8] Movants argue that Kentucky's CR 65.07 and CR 65.09 procedures "unduly impede or restrict the enforcement of arbitration agreements which fall within the scope of the FAA" because they require a greater showing than the rules authorizing direct appeals from final judgments. Additionally, Movants take issue with the fact that, compared to a direct appeal, interlocutory relief under CR 65.07 and CR 65.09:(1) allows them shorter briefing time; (2) denies them the ability to file a reply brief; and (3) does not allow them to seek rehearing. Movants also observe that Kentucky statutory law authorizes a direct appeal from denials of arbitration[9] in all contexts other than em-

---

6. *Id.* at 84 (footnotes omitted).

7. CR 65.07(5)(b) ("The basis of affirmative relief shall be the grounds specified in Rule 65.04(1) ...."); CR 65.04(1):

   > A temporary injunction may be granted during the pendency of an action on motion if it is clearly shown by verified complaint, affidavit, or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer

   immediate and irreparable injury, loss, or damage pending a final judgment in the action, or the acts of the adverse party will tend to render such final judgment ineffectual.

   *Id.*

8. 9 U.S.C. § 16(a).

9. KRS 417.220(1) ("An appeal may be taken from: (a) An order denying an application to compel arbitration made under KRS 417.060

ployment or insurance,[10] and Movants contend that the United States Supreme Court's conclusion that the preemptive FAA provisions apply to employment contracts [11] not only calls this dichotomy into question, but also creates a potential equal protection quandary. Accordingly, Movants ask this Court to: (1) vacate the order of the Kentucky Court of Appeals denying CR 65.07 relief; (2) overrule *Bridgestone/Firestone v. McQueen* (which became final without either party seeking discretionary review) as inconsistent with and preempted by the Federal Arbitration Act; and (3) remand this matter to the Kentucky Court of Appeals with instructions to consider Movants' appeal as a CR 73 direct appeal.

It appears that Movants have not only confused their two (2) appellate actions, but that they have "jumped the gun" by raising such arguments in this proceeding. Simply stated, Movants' "improper forum" arguments are not germane to our CR 65.09 inquiry. If the Court of Appeals

elects to dismiss 2001–CA–2668 on the grounds that it has no jurisdiction to entertain a direct appeal from the interlocutory order denying Movants' motion to compel arbitration, Movants could raise these arguments in a motion for discretionary review from the dismissal. Here, however, we are considering Movant's *first appellate action*—the one in which they specifically invoked the CR 65.07 jurisdiction of the Court of Appeals, and then this Court's CR 65.09 jurisdiction. We can neither find nor imagine any justification for this Court to remand this matter to the Court of Appeals and instruct them to reconsider a pleading that Movants labeled a *"Motion Pursuant to CR 65.07* For Relief From Order Denying Motion to Compel Arbitration" (emphasis added) as if it were actually a CR 73 direct appeal. Thus, we conclude that Movants' criticism of the CR 65.07 and CR 65.09 interlocutory appeal procedures does not establish "extraordinary cause" to support the relief they desire.

----

...."); *Marks v. Bean*, Ky.App., 57 S.W.3d 303, 304 (2001) ("Although interlocutory, such an appeal is allowed pursuant to Kentucky Revised Statutes (KRS) 417.220(1)(a)."); *Conseco Finance Servicing Corp. v. Wilder*, Ky.App., 47 S.W.3d 335, 340 (2001); *Valley Construction Company, Inc. v. Perry Host Management Company, Inc.*, Ky. App., 796 S.W.2d 365, 366 (1990).

10. KRS 417.050:

A written agreement to submit any existing controversy to arbitration or a provision in written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract. This chapter does not apply to:
(1) Arbitration agreements between employers and employees or between their respective representatives; and
(2) Insurance contracts. Nothing in this subsection shall be deemed to invalidate or render unenforceable contractual arbi-

tration provisions between two (2) or more insurers, including reinsurers.
*Id.; Bridgestone/Firestone v. McQueen*, Ky. App., 3 S.W.3d 366 (1999):
In 1984, the Commonwealth of Kentucky adopted the Uniform Arbitration Act set forth at KRS Chapter 417. As Firestone notes, the Act expressly provides for appeals from an order denying an application to compel arbitration—even though such an order is not final under CR 54.01. KRS 417.220(1)(a). However, the Act also *specifically excludes* from its provisions *arbitration agreements between employers and employees.* As a result, McQueen argues, the appeal of this interlocutory order is not governed by the Act. We agree. [2]
[2] The provisions of the federal Act do not preempt Kentucky's procedure for obtaining an immediate review of an order denying the application for arbitration.
*Id.* at 367.

11. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001).

■ Nor do we believe that Movants have otherwise demonstrated sufficient cause warranting CR 65.09 relief. Movants do not even allege that the trial court's factual finding as to Respondent's lack of actual notice was clearly erroneous. Instead, Movants direct the Court to case law addressing an employer's ability to unilaterally change the terms and conditions of employment. However, none of the authority Movants cite demonstrates that, under Kentucky contract law, Respondent could have reached a "meeting of the minds" with Oakwood and agreed to arbitrate her claims without having actual notice of Oakwood's arbitration policy. Because Movants have failed to show otherwise, we therefore find both that the trial court's factual finding was supported by substantial evidence and that the trial court properly concluded that Respondent had not contracted away her right to proceed in a judicial forum.

## IV. CONCLUSION

For the above reasons, we deny Movants' Motion to Vacate Pursuant to CR 65.09.

All concur.

Entered: August 22, 2002.

/s/ Joseph E. Lambert
CHIEF JUSTICE