RENDERED:  DECEMBER 9, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0468-MR

MANNING G. WARREN                                                            APPELLANT

v.         APPEAL FROM FRANKLIN CIRCUIT COURT
HONORABLE THOMAS D. WINGATE, JUDGE
ACTION NO. 21-CI-00010

UNIVERSITY OF LOUISVILLE                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; ACREE AND TAYLOR, JUDGES.

ACREE, JUDGE:  Appellant, Manning G. Warren, appeals the Franklin Circuit

Court's orders denying his motion for a temporary injunction and granting

Appellee's, University of Louisville's, motion to dismiss.  After careful review, we

affirm.

In 1984, the James Graham Brown Foundation gifted $750,000 to

Appellee to establish an endowed chair of commercial law at the University of

Louisville Brandeis School of Law. This gift created the H. Edward Harter Chair of Commercial Law (the Harter Chair), which Appellant has continued to hold since 1990 as a tenured professor of law. Before Appellee hired Appellant, his appointment letter stated Appellant "will be assigned a full-time personal secretary, subject to the understanding that other faculty members at the School of Law may use the secretary's typing services when not required by [Appellant]." The letter also stated the university's governing handbook, the *Redbook*, would govern Appellant's employment.

In 2018, Appellee claims its Integrity and Compliance Office received multiple hotline complaints alleging Appellant misused his administrative assistants and had been misusing them for years. According to Appellee, the complaints included tips that Appellant used his assistants to conduct personal tasks for him unrelated to his role at the university, including work done outside business hours for which the assistants were not compensated. In response, Appellee initiated an audit to investigate the allegations.

Appellee claims the internal audit substantiated the hotline complaints and found Appellant tasked his assistants with the following: booking dog kennel appointments for Appellant's dog; booking a personal ski vacation for Appellant and his family; scheduling Appellant's personal medical appointments and paying Appellant's personal bills, including a phone bill and credit card bill; helping

Appellant's children with car insurance and title registration for personal vehicles; and running items to Appellant's children at school. Appellee's audit showed assistants performed many of these tasks outside regular business hours and, therefore, the tasks were uncompensated. Appellee calculated the amount owed to each assistant who performed extracurricular tasks.

To pay the assistants, Appellee requested Appellant personally pay his former assistants or, in the alternative, the money would come out of funding for the Harter Chair. To the Appellee, at issue was the compensation of two former assistants: Janet Sullivan and Betsy Wiley. Appellant responded stating Janet did not go uncompensated as he personally paid her $32,350 for undisclosed reasons. Appellant refused to pay Betsy. Without justification for withholding compensation from Betsy, Appellee decided to use Harter Chair funds to pay her. Additionally, Appellee determined Appellant's then-current assistant worked less than her required 37.5 hours per week, performing only about 7.5 to 10.5 hours of work each week for Appellant. Appellee, as a result, suggested Appellant share his assistant with other professors.

Appellant rejected this idea, claiming his appointment letter guarantees him an assistant that he has exclusive access to. Appellant resisted and refused to allow his assistant to perform work for other professors. Once COVID-

19 lockdown went into full effect, Appellee transitioned Appellant's assistant to perform work for multiple professors. Appellant then initiated this lawsuit.

In his complaint, Appellant sought injunctive relief against Appellee. Appellant alleged the employment letter guaranteed him a "personal secretary." Complaint ¶ 1. Additionally, Appellant claimed that during contract negotiations, he orally expressed to Appellee he would not accept the Harter Chair position unless the university guaranteed him a "personal secretary." Complaint ¶ 9. Appellant stated the importance of this through several oral statements made prior to the parties entering the employment contract. Complaint ¶ 9-12. The appointment letter for Appellant's employment explicitly stated: Appellant "will be assigned a full-time personal secretary, subject to the understanding that other faculty members at the School of Law may use the secretary's typing services when not required by [Appellant]."

The Franklin Circuit Court denied Appellant's motion for temporary injunction on January 20, 2021. A few months later, Appellee filed a motion to dismiss pursuant to CR[1] 12.02, and the circuit court granted this motion, finding the complaint did not possess a cognizable claim as a matter of law. In its written opinion, the circuit court concluded that the 1990 appointment letter did not

---

[1] Kentucky Rules of Civil Procedure.

constitute a contract, but even if it construed the letter as a contract, Appellant failed to state a valid breach of that contract in his complaint. This appeal follows.

Appellant's first argument is that the circuit court erred when it denied the temporary injunction he sought pursuant to CR 65.04. We conclude this argument is waived. "CR 65.07 allows for a streamlined and expedited disposition of certain matters appropriate for injunctive relief – followed by an opportunity for immediate review by the Kentucky Supreme Court under CR 65.09." *Bridgestone/Firestone v. McQueen*, 3 S.W.3d 366, 367 (Ky. App. 1999). This procedure is unique to orders relating to temporary injunctions (*i.e.*, not restraining orders or permanent injunctions, *see* CR 65.01(a) and (c), respectively). Relief from orders denying a temporary injunction must be sought in this Court within twenty (20) days. CR 65.07(1) ("When a circuit court by interlocutory order has granted, denied, modified, or dissolved a temporary injunction, a party adversely affected may within 20 days after the entry thereof move the Court of Appeals for relief from such order."). Appellant did not pursue such relief within that twenty-day time limit.[2]

---

[2] Even timely pursuit of such appellate court relief faces and "enormous burden," as our Supreme Court noted when it said:

> [T]he burden placed on an aggrieved party in requesting relief pursuant to 65.07 is high. Indeed, a trial court will only grant an injunction where it is clearly shown that, among other things, "the movant will suffer immediate and irreparable injury, loss, or damage pending a final judgment." CR 65.04. Thus, the Court of Appeals will only reverse where the movant can show such injury or loss will occur in light

Next, we consider whether the circuit court properly granted Appellee's motion to dismiss Appellant's claims for breach of contract and declaration of rights.

When reviewing a circuit court's granting of a motion to dismiss, the appropriate standard of review is *de novo*. *Netherwood v. Fifth Third Bank, Inc.*, 514 S.W.3d 558, 563 (Ky. 2017); *Carruthers v. Edwards*, 395 S.W.3d 488, 491 (Ky. App. 2012). "It is well settled in [Kentucky] when considering a motion to dismiss under [CR 12.02], that the pleadings should be liberally construed in a light most favorable to the plaintiff and all allegations taken in the complaint to be true." *Mims v. Western-Southern Agency, Inc.*, 226 S.W.3d 833, 835 (Ky. App. 2007) (citing *Gall v. Scroggy*, 725 S.W.2d 867, 869 (Ky. App. 1987)). "[I]n reviewing a motion to dismiss, the trial court is not required to make any factual findings . . . ." *D.F. Bailey, Inc. v. GRW Eng'rs, Inc.*, 350 S.W.3d 818, 820 (Ky. App. 2011) (citing *Benningfield v. Pettit Env't, Inc.*, 183 S.W.3d 567, 570 (Ky. App. 2005)). Nevertheless, "[A circuit court] may properly consider matters outside of the pleadings in making its decision. However, reliance on matters outside the pleadings by the court effectively converts a motion to dismiss into a

of the trial court's decision. Similarly, this Court will only entertain CR 65.09 motions where "extraordinary cause" is shown. All of this evidences the enormous burden placed on the movant when requesting relief pursuant to CR 65.07 and CR 65.09.

*Kindred Hosps. Ltd. Partnership v. Lutrell*, 190 S.W.3d 916, 919 (Ky. 2006).

motion for summary judgment." *Id.* at 820-21 (citing *McCray v. City of Lake Louisvilla*, 332 S.W.2d 837, 840 (Ky. 1960)).

The circuit court here considered matters Appellee presented to the court which were outside the pleadings. It is fair to construe the black letter of Appellant's appointment letter as a part of his complaint, but evidence concerning Appellee's internal investigation and the alleged misuse of Appellant's assistants were not in Appellant's complaint. Considering such evidence turned Appellee's motion to dismiss into a motion for summary judgment, which is governed by CR 56. *See* CR 12.02.

A circuit court properly grants summary judgment "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. "An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exist[ed] and the moving party was entitled to judgment as a matter of law." *Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 3 (Ky. App. 2018); *see also Smith v. Crimson Ridge Dev. LLC*, 410 S.W.3d 619, 620 (Ky. App. 2013) (citing CR 56.03; *Steelvest, Inc. v. Scansteel Serv. Ctr.*, 807 S.W.2d 476, 480 (Ky. 1991)). Thus,

appellate courts review a circuit court's summary judgment *de novo*. *Cmty. Fin. Servs. Bank v. Stamper*, 586 S.W.3d 737, 741 (Ky. 2019).

Assuming, *arguendo*, the appointment letter created a valid contract under Kentucky law, we will address whether Appellant's claim may survive summary judgment. For the following reasons, we concluded the claims cannot.

To begin, we note the cardinal rule of contract interpretation is that words will be given their ordinary meaning where no ambiguity exists on the face of the document. *Fay E. Sams Money Purchase Pension Plan v. Jansen*, 3 S.W.3d 753, 757 (Ky. App. 1999). Appellant, here, alleges Appellee guaranteed him exclusive access to a personal secretary. Appellant cites *Board of Regents of Kentucky State University v. Gale* to support its argument that Appellant's complaint survives Appellee's motion. 898 S.W.2d 517 (Ky. App. 1995). However, this reliance is misplaced. Insofar as *Gale* could have bearing on this case, the relevant facts are as follows.

In *Gale*, Kentucky State University created an endowed chair for the humanities, a position the university offered to Gale. *Id.* at 518. At the time, it was Kentucky State's first dabble into the academic world of endowed chairs, as it had no experience with endowed chairs prior to this. *Id.* at 517. Several notable problems arose between the university and Gale because of this inexperience. *Id.* Relevant to the appeal in *Gale* was whether Kentucky State employed Gale as a

tenured professor or if the university could place a time limitation on his employment. *Id.* at 520. After trial, a jury found Gale, in fact, was fully tenured under his employment contract because paragraph 3 of his appointment letter explicitly said so. *Id.*

Here, Appellant's appointment letter explicitly indicates he may have to share his assistant, stating: Appellant "will be assigned a full-time personal secretary, subject to the understanding that other faculty members at the School of Law may use the secretary's typing services when not required by [Appellant]." There is no ambiguity in the above quoted language; Appellant may have to share his assistant. Like the operative principles in *Gale*, if we give the plain, ordinary meaning to the words of the appointment letter, Appellant had a right to an assistant but not a right to one only employed to serve his exclusive needs.

On appeal, Appellant is primarily concerned with the diminished access to and shared use of his assistant. At issue is not whether Appellant may use his assistant for purely private matters or only matters related to his tenured employment as the Harter Chair. The plain language of the appointment letter shows Appellant did not have exclusive access to an assistant. Appellant points to neither evidence of record nor the potential for undiscovered evidence which might support a claim for breach of contract based on Appellant's assistant's work

assignments. Appellant's aspirations for such evidence is not enough to survive a motion for summary judgment.

For the foregoing reasons, we affirm the Franklin Circuit Court's order denying Appellant's motion for a temporary injunction and its order granting Appellee's, University of Louisville's, motion to dismiss.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Garry R. Adams
Abigail V. Lewis
Louisville, Kentucky

BRIEF FOR APPELLEE:

Donna King Perry
Jeremy Rogers
Matthew Barszcz
Aaron Vance
Louisville, Kentucky